J-S35030-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| C.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| K.N. | : | |
| | : | |
| Appellant | : | |
| | : | |
| | : | No. 215 WDA 2017 |

Appeal from the Order Dated January 3, 2017
In the Court of Common Pleas of Erie County
Civil Division at No(s):  10901-2016

BEFORE:   LAZARUS, RANSOM, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY RANSOM, J.:                    **FILED JULY 26, 2017**

K.N. ("Mother") appeals the order dated and entered January 3, 2017, denying her Complaint for Modification of Custody concerning her two male children with C.G. ("Father"): A.G., born in October of 2002, and R.G., born in May of 2005, (collectively, the "Children"), and finding it in the best interest of the Children to continue in effect the Alaskan Parenting Agreement signed April 4, 2007, and the Custody Consent Agreement filed June 7, 2016, as amended in the trial court's January 3, 2017 order to provide Mother with additional partial physical custody of the Children at her

_____

[*] Former Justice specially assigned to the Superior Court.

home in Alaska during their summer vacation, increasing her custodial time to eight weeks.[1]  We affirm.

The trial court set forth the factual background and procedural history of the appeal as follows.

> On October 18, 2016, [M]other filed a Complaint for Modification of Custody Order seeking to relocate the children to Alaska.[1]  This matter was scheduled for a custody trial.  At the December 13, 2016, de novo hearing, the [c]ourt received testimony from [M]other, [F]ather, [M]other's husband, [P]aternal [G]randfather, the [C]hildren's scoutmaster[, . . .] [their] pastor, [F]ather's paramour, and spoke with the [C]hildren in chambers.

## DISCUSSION

> Mother seeks an award of relocation.  Mother resides in Valdez, Alaska with her husband and twenty (20)[-]year[-]old daughter.  Mother is employed full-time during the week.  Maternal [A]unt and [M]other's husband are available to care for [the] [C]hildren when [M]other is working.  Mother's neighborhood is a safe residential community within walking distance of downtown Valdez.  The [C]hildren have friends in [M]other's neighborhood.  Activities such as wrestling, basketball, football, and Boy Scouts are available through the school and the community.  When in [M]other's custody, the [C]hildren participate in outdoor activities.  Mother would ensure the [C]hildren attend church.  A family clinic is located nearby to meet the [C]hildren's medical needs.

> When in [M]other's custody[,] the [C]hildren perform chores and complete their summer school work.  Mother's school

_____

[1] Although Mother used the term complaint, her request was actually a petition for modification of the existing custody order to allow her primary physical custody of the Children at her home in Alaska during the school year, which would require the Children to relocate to Alaska.  The trial court, thus, treated the modification petition as also seeking relocation of the Children without Mother, as she already resides in Alaska.

- 2 -

district is small and highly[-]rated with many sports and academic opportunities. Mother and [the] [C]hildren see each other during the summer school vacation, every other winter break, and during [M]other's trips to Erie County, PA. Mother pays for the [C]hildren's transportation to Alaska and proposes [F]ather pay for transportation to Erie County if the [C]hildren relocate to Alaska. In April 2016, [M]other filed a PFA [Petition for Protection From Abuse] on behalf of the [C]hildren against [F]ather asserting [F]ather physically disciplined the [C]hildren. The final PFA was denied by Judge Robert Sambroak on April 5, 2016.

Mother disciplines [the] [C]hildren by putting them in a timeout, sending them to their rooms, and taking away their electronics. Mother wants [the] [C]hildren to have a relationship with [F]ather. The [C]hildren keep [M]other informed about their progress in school. Mother and [F]ather have difficulty communicating. Mother asserts the [C]hildren have expressed a desire to relocate to Alaska, [F]ather has had primary custody for nine years, and there is no reason the [C]hildren cannot reside primarily with [M]other.

Father and [the] [C]hildren have resided in Erie County since 2007 by consent of the parties. Father is employed full-time Monday through Friday. [The] [C]hildren have their own bedrooms in [F]ather's home and are comfortable there. Father's residence is located in a rural area where the [C]hildren can ride their bikes. Father has breakfast with the [C]hildren before school and the [C]hildren get off the school bus at [P]aternal [G]randparents' residence at 3:00 p.m. Paternal [G]randparents assist with homework. Father also reviews and discusses homework with the [C]hildren. Paternal [A]unt and Uncle and [G]reat[-][A]unt are also available to assist with childcare. Father has some extended family in Alaska.

The [C]hildren attend the Wattsburg Area School District, located approximately two and one-half (2½) miles from [F]ather's residence. Father acknowledges [A.G.] has struggled with completing school work while [R.G.] has always done well in school. [A.G.] is working on improving his school performance. Father is in contact with the [C]hildren's teachers. Father denies any disciplinary concerns regarding the [C]hildren. Father admits [A.G.] has been suspended from school twice, including once last year. The [C]hildren have friends at school whom [sic]

- 3 -

they occasionally see outside of school. [R.G.] participates in basketball and [A.G.] participates in wrestling and has signed up for track and field. The [C]hildren participate in Boy Scouts where they both hold leadership positions. The [C]hildren play flag football through the YMCA, go skiing, camping, take road trips, and attend church regularly. Father's paramour has accompanied [F]ather and [the] [C]hildren on road trips. Mother and [the] [C]hildren speak regularly but do not use social media. Mother consistently sees the [C]hildren approximately ten to twelve weeks each year. Father does not prevent children from contacting [M]other. Father and [M]other communicate through text message and email.

Father does not believe relocation is in the [C]hildren's best interests. Valdez, Alaska is a small, isolated community. Father wants the Children to have a relationship with [M]other and to keep the same custody schedule. Father acknowledges using physical discipline as a last resort and does utilize other forms of punishment. The [C]hildren have chores and take care of family pets. Father admits to disparaging [M]other in front of the [C]hildren but denies alienating the [C]hildren from [M]other. The [C]hildren's healthcare provider, dentist, orthodontist, and family counselor, whom [F]ather and [C]hildren see every three weeks, are located nearby. Father acknowledges the [C]hildren are comfortable in Alaska and many activities are available there.

[A.G.] is fourteen (14) years old, attends eighth grade at Seneca High School, and expressed a desire to relocate to Alaska. [A.G.] requests to reside primarily with [M]other because he has resided with [F]ather for nine (9) years. [A.G.] does not always get along with [F]ather but their relationship is improving. Father speaks disparagingly about [M]other in front of him. Father has not physically punished [A.G.] in the past year. Father disciplines [A.G.] by taking away his electronics. [A.G.] participates in sports such as wrestling and flag football. [A.G.] acknowledges struggling in school but his school performance is improving. [A.G.] has friends nearby. [A.G.] enjoys science and writing. [A.G.] participates in activities with [F]ather such as snowmobiling, camping, hunting, and four-wheeling.

[R.G.] is eleven (11) years old, attends sixth grade at Wattsburg Area Middle School, and expressed a desire to reside

- 4 -

primarily with [M]other. [R.G.] enjoys gym class, has friends at school, and earns good grades. [R.G.] participates in basketball through school and football through the YMCA. [R.G.] enjoys four-wheeling. Father does not physically punish [R.G.]. [R.G.] enjoys the time he spends with [M]other. When in [M]other's [c]ustody[,] [R.G.] rides dirt bikes and goes skate boarding and camping. [R.G.] gets along well with [M]other although they sometimes yell at each other. [R.G.] gets along with [M]other's husband and [with his] twenty (20)[-]year[-]old half-sister. Maternal [A]unt and [his] two (2)[-]year[-]old cousin, with whom he has a positive relationship, also reside in Valdez, Alaska. [R.G.] is not concerned about changing schools or with not seeing his friends who reside in Erie County. [R.G.] expressed a preference to spend [the] summer in Erie County.

The [C]hildren were both well-spoken and presented as sufficiently mature for their ages. The [C]hildren have their own bedrooms and family pets at each parents' residence. The [C]hildren expressed a preference to reside together and to continue participating in outdoor activities. The [C]hildren have a positive sibling relationship.

Mother's husband is employed full-time, has three adult children, and has good relationships with [A.G.] and [R.G.]. Mother's husband and the [C]hildren perform farm work together and ride motorbikes and four-wheelers. Mother's husband expects the [C]hildren to be respectful, to perform chores, and to clean their rooms. The [C]hildren receive an allowance. Mother's husband acknowledges the [C]hildren have difficulty adjusting to the different households. Mother disciplines the [C]hildren by discussing their behavior with them and taking away privileges. The [C]hildren have requested to relocate to Alaska. Mother's husband states their home is supportive[,] and he and [M]other will provide for the [C]hildren's needs. Paternal [G]randfather sees the [C]hildren every day after school and on days when the [C]hildren do not have school. Father picks up the [C]hildren from [P]aternal [G]randparents' home at 5:45 p.m. At [P]aternal [G]randparents' home[,] the [C]hildren play, eat snacks, do homework, and help around the house. [The] Children eat dinner at [P]aternal [G]randparents' residence on Tuesdays before Boy Scouts. [The] Children attend church with paternal grandparents and father. Paternal [G]randparents attend the [C]hildren's extracurricular events and take the [C]hildren hunting and shopping. Paternal [G]randparents'

extended family resides nearby and gets along with the [C]hildren.

The [C]hildren's scoutmaster testified [F]ather is an assistant scoutmaster and the [C]hildren both hold leadership positions. The [C]hildren are involved in many activities; they get along with the other [B]oy [S]couts, and enjoy their participation. The [C]hildren's pastor testified [F]ather and the [C]hildren are active in their church and the [C]hildren appear happy to attend church with [F]ather. Father's paramour testified she and [F]ather attend the [C]hildren's activities and go on family trips. Father's paramour is comfortable around the [C]hildren and will not interfere with the [C]hildren's relationship with their mother.

_____

[1] Pursuant to the Alaskan Parenting Agreement signed April 4, 2007, and the Custody Consent Agreement filed June 7, 2016, [the] parents share legal custody. Father has primary custody and [M]other has periods of partial custody for six (6) weeks in the summer and alternating school breaks.

Trial Court Opinion, 1/3/17, at 1-6 (footnote in original).

On January 3, 2017, the trial court entered the order denying Mother's petition, finding it in the best interest of the Children to continue in effect the Alaskan Parenting Agreement signed April 4, 2007, and the Custody Consent Agreement filed June 7, 2016, as amended in the trial court's January 3, 2017 order to provide Mother with additional partial physical custody of the Children during their summer vacation. On February 1, 2017, Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

In her brief on appeal, Mother raises the following issues:

A. Did the [trial] court err in denying the appellant's [Mother's] request to relocate the Children in this case to her home in Alaska?

B. Did the [trial] court err in giving insufficient weight to the evidence of abuse in this case?

C. Did the [trial] court err in giving insufficient weight to the Children's well-reasoned preference?

Mother's Brief, at 3-4 (unpaginated).[2]

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S.

§ 5321-5340, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***C.R.F. v. S.E.F.***, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We have stated:

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge

---

[2] Mother framed her issues somewhat differently in her concise statement, but we find that she preserved them for our review.

gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (*quoting*

***Jackson v. Beck***, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

In ***M.A.T. v. G.S.T.***, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we

stated the following regarding an abuse of discretion standard.

> Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

***Id.*** at 18-19 (quotation and citations omitted).

Regarding the definition of an abuse of discretion, this Court has stated: "[a]n abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." ***Bulgarelli v. Bulgarelli***, 934 A.2d 107, 111 (Pa. Super. 2007) (quotation omitted).

With any custody case decided under the Act, the paramount concern is the best interests of the child. ***See*** 23 Pa.C.S. §§ 5328, 5338.

Section 5323 of the Act provides for the following types of awards:

**(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S. § 5323.

Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child.  23 Pa.C.S. § 5338.  Section 5328(a) sets forth the best interest factors that the trial court must consider.  *See E.D. v. M.P.*, 33 A.3d 73, 80-81, n.2 (Pa. Super. 2011).

Section 5328(a) of the Act provides as follows.

**§ 5328.  Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328.

In making a decision on whether to modify an existing custody order, the court must consider all of the section 5328(a) factors. *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011). Our case law is clear that the amount of weight that a court gives to any one factor is almost entirely within its discretion. *See M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013) (citing *A.D. v. M.A.B.*, 989 A.2d 32, 35–36 (Pa. Super. 2010)) ("It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case."). The one exception is that trial courts must give weighted consideration to those factors which affect the safety of the child. *See* 23 Pa.C.S.A. § 5328(a).

Where a request for relocation of the subject child along with a parent is involved, the trial court must consider the following ten relocation factors set forth within section 5337(h) of the Act:

**(h) Relocation factors.—**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

- 11 -

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h). *See E.D.* at 81-82 ("Section 5337(h) mandates that the trial court *shall* consider all of the factors listed therein, giving weighted consideration to those factors affecting the safety of the child."); *see also*

*D.K. v. S.P.K.*, 102 A.3d 467, 477-78 (Pa. Super. 2014) (holding that trial

court is to consider the section 5337(h) factors only where a parent is relocating with child).

The Court stated in **D.K.**, "where neither parent is relocating, and only the custodial rights of the parties are at issue, section 5337 of the Child Custody Act is not *per se* triggered." **D.K.**, 102 A.3d 474. However, where "the children stand to move a significant distance, trial courts should still consider the relevant factors of section 5337(h) in their section 5328(a) best interests analysis." **Id.** at 476.

Section 5337(i) provides that the "party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in subsection (h)," and that each party "has the burden of establishing the integrity of that party's motives in either seeking relocation or seeking to prevent the relocation." 23 Pa.C.S. § 5337(i).

Further, we have explained as follows:

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." **C.B. v. J.B.,** 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.,** 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*,

- 13 -

[620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). **Id.**

**A.V. v. S.T.**, 87 A.3d 818, 822-823 (Pa. Super. 2014).

Similarly, with regard to relocation, in **A.M.S. v. M.R.C.**, 70 A.3d 830

(Pa. Super. 2013), we stated:

[W]e conclude here that sections 5323(d) and 5328 require the trial court to set forth its *ratio decidendi* at or near the time it issues its decision in a custody proceeding. We have held that, because the best interests of the child are the paramount concern of any custody case, the trial court must address the sixteen best interest factors of section 5328(a) and the ten relocation factors of section 5337(h). **B.K.M. v. J.A.M.**, 2012 PA Super 156, 50 A.3d 168, 172-75 (Pa. Super. 2012) (finding the trial court erred in failing to consider all section 5328(a) and section 5337(h) factors). Therefore, by logical necessity, today we emphasize that our holding in C.B. (*i.e.*, that section 5323(d) requires the trial court to delineate its reasoning at or near the time of its decision) extends to cases that involve both custody and relocation pursuant to section 5337.

**A.M.S.**, 70 A.3d at 835.

Additionally, in **A.M.S.**, we held that, with regard to relocation:

Section 5337(h) mandates that the trial court **shall** consider all of the factors listed therein, giving weighted consideration to those factors affecting the safety of the child.

**A.M.S.**, 70 A.3d at 836 (citations omitted) (emphasis in original).

Moreover, "[w]hen a custody dispute involves a request by a party to relocate, we have explained 'there is no black letter formula that easily resolves relocation disputes; rather, custody disputes are delicate issues that must be handled on a case-by-case basis.'" **C.M.K. v. K.E.M.**, 45 A.3d 417,

- 14 -

421 (Pa. Super. 2012) quoting **Baldwin v. Baldwin**, 710 A.2d 610, 614 (Pa. Super. 1998)).

In its Opinion, the trial court stated the following with regard to the section 5328(a) best interest factors.

> In the instant case, [M]other seeks a modification which entails a change to an award of custody. Thus, the [c]ourt will address each of the factors as listed at 23 Pa.C.S. § 5328(a) in seriatim.
>
> **(1) Which party is more likely to encourage and permit frequent and continuing contact between the children and another party.**
>
> The parties stand on equal footing regarding this factor. Both parents testified they want the [C]hildren to have a relationship with the other. While in [F]ather's custody, the [C]hildren speak regularly with [M]other via telephone. The parties are able to communicate via email and text message. Although tension exists between the parties, neither parent interferes with the [C]hildren's communication and contact with the other parent.
>
> **(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the children or an abused party and which party can better provide adequate physical safeguards and supervision of the children.**
>
> Although this factor appears to favor [M]other, under the circumstances it is neutral. In April 2016, [M]other filed a PFA on behalf of the [C]hildren against [F]ather alleging [F]ather physically disciplined the [C]hildren. The final PFA was denied by Judge Robert Sambroak on April 5, 2016. Father admits to physically disciplining [A.G.] as a last resort. Father utilizes other disciplinary means such as taking away electronics. [A.G.] informed the [c]ourt that [F]ather has not utilized physical discipline against him this year. No evidence of abuse by [M]other or a member of [M]other's household was introduced at trial.

- 15 -

**(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).**

This factor does not apply. There were no allegations of involvement with protective services.

**(3) The parental duties performed by each party on behalf of the children.**

This factor favors [F]ather. The [C]hildren have resided primarily with [F]ather in Erie County for nine years. The [C]hildren attend school in [F]ather's school district and participate in sports such as football, wrestling, and basketball through school and the YMCA. The [C]hildren and [F]ather participate in Boy Scouts where both [C]hildren hold leadership positions. Father, [P]aternal [G]randparents, and [the] [C]hildren regularly attend church together. The [C]hildren's healthcare provider, dentist, orthodontist, and family counselor, whom [F]ather and [the] [C]hildren see every three weeks, are all located in Erie County. Father is in contact with the [C]hildren's teachers and ensures the [C]hildren complete their homework. Father utilizes [P]aternal [G]randparents to care for [the] [C]hildren after school and on days when the [C]hildren do not have school. [A.G.'s] school performance was slipping but is now improving.

Mother also duly performs parental duties when [the] [C]hildren are in her custody. The [C]hildren keep [M]other informed of their schooling. Mother ensures the [C]hildren complete their summer school work and are engaged in activities such as riding motorbikes, four-wheeling, and helping mother's husband on his farm. Mother's school district is highly rated and offers many sports and academic opportunities. Mother would ensure [the] [C]hildren attend church. A family health care center is located nearby to meet the [C]hildren's medical needs.

Relocation to Alaska would necessitate changing the [C]hildren's school and healthcare providers. Since [F]ather has ensured for several years that the [C]hildren complete their homework, receive necessary healthcare, including counseling, and participate in many activities, the [c]ourt finds it is in the [C]hildren's best interests to reside primarily with [F]ather during the school year.

**(4) The need for stability and continuity in the children's education, family life and community life.**

This factor favors [F]ather. The [C]hildren have resided with [F]ather in Erie County for nine years. The [C]hildren get off the school bus at [P]aternal [G]randparents' residence daily where they play, complete homework, eat snacks, and help around the house. [R.G.] earns good grades, enjoys gym, and has friends at school. [A.G.'s] school performance is improving; he enjoys science and writing, and has friends nearby. Father participates with [the] [C]hildren in Boy Scouts, where both [C]hildren hold leadership positions. Father, [P]aternal [G]randparents, and [the] [C]hildren attend church together regularly. The [C]hildren participate in sports through school and the YMCA. The [C]hildren participate in outdoor activities with [F]ather such as snowmobiling, four-wheeling, camping, and hunting. Father takes [the] [C]hildren on road trips. Paternal [A]unt, [U]ncle, and [G]reat-[A]unt also reside nearby and have positive relationships with [the] [C]hildren.

When in [M]other's custody[,] the [C]hildren also participate in outdoor activities such as riding dirt bikes, camping, four-wheeling, and skateboarding. The [C]hildren perform farm work with [M]other's husband. If the [C]hildren relocate to Alaska, activities such as church and Boy Scouts would be available. The [C]hildren get along with their twenty (20)[-]year[-]old half-sister, [M]aternal [A]unt and two (2)[-]year[-]old cousin. The [C]hildren enjoy the time they spend with both parents.

The [c]ourt finds it is in the [C]hildren's best interests to reside with [F]ather during the school year as the [C]hildren are doing well in school and enjoy many activities through their school and the YMCA. The [C]hildren enjoy a close positive relationship with their paternal grandparents whom they see daily. The [c]ourt acknowledges the [C]hildren expressed a preference to reside with [M]other in Alaska and have positive relationships with [M]other, [M]other's husband, and extended family. However, the [c]ourt finds it will promote stability in the [C]hildren's education, family life, and community life to reside primarily with [F]ather during the school year.

**(5) The availability of extended family.**

This factor favors [F]ather. Paternal [G]randparents provide care for the [C]hildren daily and have close, positive relationships with them. The [C]hildren get off the school bus at [P]aternal [G]randparents' residence. The [C]hildren eat snacks, complete homework, and help around the house. Father picks [C]hildren up from [P]aternal [G]randparents' residence at 5:45 p.m. On Tuesdays, the [C]hildren eat dinner at [P]aternal [G]randparents' residence before attending Boy Scouts. Paternal [G]randparents attend the [C]hildren's extracurricular activities. [The] Children regularly attend church with [F]ather and [P]aternal [G]randparents. [P]aternal [A]unt, [U]ncle, and [G]reat-[A]unt also reside nearby and are available to care for the [C]hildren.

When in [M]other's custody, [M]aternal [A]unt is available to care for [the] [C]hildren. The [C]hildren have close, positive relationships with their extended family members.

**(6) The children's sibling relationships.**

This factor favors [M]other. The [C]hildren's twenty (20)[-]year[-]old half[-]sister resides with [M]other. The [C]hildren have a close positive relationship with her and with each other. Father has no other children.

**(7) The well-reasoned preference of the children, based on the children's maturity and judgment.**

This factor favors [M]other. The [C]hildren expressed a strong preference to reside with [M]other. The [C]hildren enjoy the time they spend with [M]other in Alaska and have resided primarily with [F]ather for nine (9) years. The [C]hildren get along well with [M]other, [M]other's husband, their twenty (20)[-]year[-]old half-sister, and [M]aternal [A]unt and two (2)[-]year[-]old cousin. The [C]hildren help [M]other's husband on his farm and go hunting, camping, and four-wheeling. The [C]hildren were not concerned about attending a new school and already have friends in mother's neighborhood. The [C]hildren's activities in Erie County, such as church and Boy Scouts, are also available in Alaska.

The [c]ourt found the [C]hildren to be well[-]spoken and reasonably mature for their ages. Although the [C]hildren

- 18 -

expressed a strong preference to relocate to Alaska, the [c]ourt finds it is in the [C]hildren's best interests to reside primarily with [F]ather during the school year to promote consistency in their education and family relationships.

**(8) The attempts of a parent to turn the children against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the children from harm.**

This factor is neutral. Although conflict exists between the parties, and [F]ather admits to disparaging [M]other in front of the [C]hildren, there is no evidence either party attempted to turn the [C]hildren against the other.

**(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the children adequate for the children's emotional needs.**

This factor is neutral. Both parties are dedicated to maintaining a loving, stable, consistent, and nurturing relationship with the [C]hildren adequate for the [C]hildren's needs.

**(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the children.**

This factor is neutral. Both parents are equally dedicated to attending to the [C]hildren's daily physical, emotional, developmental, educational, and special needs.

**(11) The proximity of the residences of the parties.**

This factor favors neither party. Father resides in Erie County, Pennsylvania, and [M]other resides in Valdez, Alaska, approximately four thousand (4,000) miles apart.

**(12) Each party's availability to care for the children or ability to make appropriate child-care arrangements.**

This factor is neutral. Father is employed full-time and is available to care for the [C]hildren when he is not working. Father utilizes [P]aternal [G]randparents to care for the

[C]hildren after school and on days they do not have school. Paternal [A]unt, [U]ncle, and [G]reat-[A]unt are also available to care for the children.

Mother and her husband are both employed full-time and are available to care for the [C]hildren when they are not working. Maternal [A]unt is also available to care for the children. The Court notes children are fourteen (14) years old and eleven (11) years old and sufficiently mature for their ages.

**(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.**

This factor is neutral. There is a high level of conflict between the parties. However, the parties demonstrate equal willingness to cooperate.

**(14) The history of drug or alcohol abuse of a party or member of a party's household.**

This factor does not apply. No evidence of alcohol or drug abuse by a party or a member of their household was introduced at trial.

**(15) The mental and physical condition of a party or member of a party's household.**

This factor does not apply. No evidence that either parent, or a member of their household, has a mental or physical condition which would interfere with parenting [was introduced at trial].

**(16) Any other relevant factor.**

There are no other relevant factors.

Trial Court Opinion, 1/3/17, at 7-11.

With regard to relocation, the trial court stated the following.

The [c]ourt must also take into consideration the relocation factors listed at 23 Pa.C,S. § 5337(h)… The Superior Court specifically stated that three factors are not encompassed by Section 5328(a) and should be considered separately.

**(1) The first of these is Section 5337(h)(2), which concerns the age, developmental stage, needs of the children and the likely impact the children's change of residence will have on the children's physical, educational and emotional development.**

This factor favors [F]ather. The [C]hildren are fourteen (14) and eleven (11) years old and have resided with [F]ather in Erie County for nine years. [R.G.] earns good grades, has friends at school, and participates in many sports and outdoor activities. [A.G.] has struggled in school but has recently been improving. [A.G.] also participates in many sports and outdoor activities. The [C]hildren's activities are available through their schools and the YMCA. Paternal [G]randparents and [F]ather assist [the] [C]hildren with school work and attend their activities. Father is an assistant scoutmaster in the [C]hildren's Boy Scout troop, where both boys hold leadership positions. The [C]hildren regularly attend church with [F]ather and [P]aternal [G]randparents. Children's healthcare providers, including dentist, orthodontist, and family counselor, whom [F]ather and [C]hildren see every three weeks, are located in Erie County. The [c]ourt notes [M]other would also ensure the [C]hildren receive a proper education and healthcare if they were to reside primarily with her. Primarily to promote consistency in the [C]hildren's physical, educational, and emotional development, the [c]ourt finds it is in the children's best interests to reside primarily with [F]ather in Erie County during the school year.

(2) **The second factor is Section 5337(h)(3), which concerns the feasibility of preserving the relationship between the other parent and the children.**

This factor is neutral. The parties have resided approximately four thousand (4,000) miles apart for nine years. Mother has consistently exercised periods of partial custody during the [C]hildren's summer school vacations and every other winter break. Mother also travels to Erie County to see the [C]hildren. The [C]hildren speak to [M]other regularly on the telephone. Both parents testified they want the [C]hildren to

have a relationship with the other. Although conflict exists between the parties, both parents are equally willing to encourage the [C]hildren's relationship with the other.

**(3) The third factor is Section 5337(h)(7), which concerns whether the change in the children's residence will enhance the general quality of life for the children.**

This factor is neutral. The [C]hildren have resided in Erie County with [F]ather for nine years. The [C]hildren attend the Wattsburg Area School District where both [C]hildren have friends and enjoy some of their classes. The [C]hildren participate in outdoor activities such as snowmobiling, camping, hunting, and four-wheeling. The [C]hildren actively participate in Boy Scouts, where they hold leadership roles. Father, [P]aternal [G]randparents, and [the] [C]hildren regularly attend church together. The [C]hildren's healthcare providers including dentist, orthodontist, and family counselor, whom [the] [C]hildren and [F]ather see every three weeks, are all located in Erie County.

The [C]hildren expressed a strong preference to relocate to Alaska. The [C]hildren have consistently spent several weeks during the summer with [M]other in Alaska and [M]other spends time with the children in Erie County during the year. If the children relocate to Alaska and reside primarily with [M]other they would attend a new school and have different healthcare providers. The [C]hildren enjoy the time they spend in [M]other's custody and have friends in [M]other's neighborhood. If the [C]hildren reside primarily with [M]other they will have access to similar sports and academic programs, including church and Boy Scouts. In Alaska, the [C]hildren will be able to participate in the same outdoor activities they enjoy in Erie County, such as snowmobiling, camping, hunting, and four-wheeling.

## CONCLUSION

The [c]ourt acknowledges both parents love the [C]hildren and are dedicated to meeting the [C]hildren's needs. The [C]hildren love their parents and want to spend time with both of them. Both parties have established the integrity of their motives regarding the relocation. The [c]ourt acknowledges this matter was a very close decision. The [c]ourt, however, finds that

[M]other did not meet her burden of establishing that the relocation will serve the best interests of the [C]hildren. The [c]ourt therefore finds it is in the [C]hildren's best interests to continue residing primarily with [F]ather during the school year. The [c]ourt, however, also finds that it is in the [C]hildren's best interests to have more periods of partial custody with mother. Thus, [M]other's partial custody during the summer school break shall be increased to eight (8) weeks.

As set forth by the review of the best interest factors at 23 Pa.C.S. § 5328(a), as well as the relevant factors listed at 23 Pa.C.S. § 5337(h), the court finds that [M]other did not meet her burden of establishing that the relocation will serve the best interests of the [C]hildren and therefore her request is denied. Primarily because of the benefits to [A.G.] and [R.G] of maintaining stability and continuity in their education, community, and family relationships, the [c]ourt finds that it is in the [C]hildren's best interests to continue in effect the Alaskan Parenting Agreement signed April 4, 2007, and the Custody Consent Agreement filed June 7, 2016, as amended herein.

Trial Court Opinion, 1/3/17, at 11-13 (citation omitted).

In her brief on appeal, Mother argues that the trial court abused its discretion in denying her request in her modification petition for primary physical custody of the Children, which would require them to relocate to her home in Alaska, asserting that the evidence supported the relocation. Mother's Brief, at 5 (unpaginated). Mother concedes that the trial court appropriately found that most of the statutory factors were neutral or inapplicable to the parties. *Id.* at 6 (unpaginated). Mother contends that the trial court abused its discretion by ruling that the best interest factor dealing with abuse, section 5328(a)(2) of the Act, did not favor either party under the evidence in this case. *Id.* Mother also urges that the trial court failed to afford sufficient weight to the well-reasoned preference of the

Children under section 5328(a)(7) of the Act. *Id.* Accordingly, Mother requests this Court to find that the trial court abused its discretion in denying her modification petition, and remand the matter to the trial court. *Id.* at 5-6 (unpaginated).

Our review of the record supports the trial court's findings that the Children are doing well in Father's primary physical custody, and that they would benefit from the stability Father provides them during the school year. Thus, the court did not abuse its discretion when it concluded that Mother's unproven allegations that Father had physically abused the Children in the past as relates to section 5328(a)(2), and the Children's preference pursuant to section 5328(a)(7), did not outweigh the other section 5328(a) factors, particularly section 5328(a)(4), which requires consideration of the need for stability and continuity in the child's education, family life, and community life.

After review of the record, we determine the trial court's findings regarding the custody factors set forth under section 5328(a), including the relevant factors under section 5337(h), and its determinations regarding the Children's best interests are supported by competent evidence in the record, and we will not disturb them. *M.J.M.*, 63 A.3d at 339; *C.R.F.*, 45 A.3d at 443. As we stated in *King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005):

> It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [sic] due deference to

the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . .

(quoting **Hanson v. Hanson**, 878 A.2d 127, 129 (Pa. Super. 2005)).

Accordingly, we affirm the trial court's January 3, 2017 custody order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  7/26/2017